STATE OF NORTH CAROLINA v. ODELL DAVIS

No. 7318SC433

(Filed 13 June 1973)

1. Homicide § 28— instruction on self-defense proper

Trial court's instruction on self-defense in a homicide case properly left it to the jury to determine the reasonableness of the belief of the defendant that he was in danger of death or great bodily harm under all the circumstances as they appeared to him.

2. Homicide § 21— voluntary manslaughter — sufficiency of evidence

Where the evidence tended to show that defendant and deceased were arguing, that defendant had a gun and that deceased was killed by the use of a deadly weapon, evidence was sufficient to support the verdict of guilty of voluntary manslaughter.

APPEAL by defendant from *Crissman, Judge,* 13 November 1972 Regular Criminal Session of Superior Court held in GUILFORD County.

Defendant was brought to trial upon an indictment, proper in form, for the first degree murder on 2 September 1972 of Thomas Williams. At the conclusion of the State's evidence the court allowed defendant's motion for nonsuit on the capital charge and submitted to the jury the possible verdicts of guilty of second degree murder, guilty of voluntary manslaughter, guilty of involuntary manslaughter, or not guilty. The jury returned a verdict of guilty of voluntary manslaughter. Defendant appeals from a judgment imposing a prison sentence of not less than ten nor more than fifteen years.

The evidence offered by the State tends to show that the defendant, Odell Davis, went to the residence of deceased, Thomas Williams, at 5212 Summit Avenue, Greensboro, on 2 September 1972. According to the testimony of the witness, Thomasine Anderson, defendant and Williams were in the backyard having an argument when Williams told defendant he was telling a damn lie and ". . . not to go in his pocket." Shortly thereafter a shot was heard and then later on another shot or two. She looked out the bathroom window and saw Williams and the defendant close together almost in an embrace. There was blood on Williams' shirt and his arm was bleeding. She immediately called to others who were in the house, and when she reached the outside, deceased was staggering backwards and he fell without saying anything. After the others had come out of the house she saw defendant running down the driveway.

Medical testimony indicated that a bullet had gone through the left forearm of deceased and that there was an entry wound beneath the left breast which ranged downward through the abdomen and liver causing massive hemorrhaging and death. All the wounds could have been caused by one bullet, but because of the lower line of entry into the breast, the doctor testified there were in all probability two bullets.

Additional testimony tended to show that defendant had been at the Williams home for some period of time, that the deceased sold home brew, and that other persons at the home were drinking.

Ruby Troxler, a next door neighbor, testified that she visited the Williams home and prior to entering the home, she

saw defendant and Tommy Williams ". . . by that car out there fussing. . . ." Other witnesses testified they saw defendant running down the road and that he admitted he had ". . . got in a fight . . ." and ". . . just shot a man."

C. E. Pegram, at defendant's request, called the Sheriff's Department and defendant turned himself in to the authorities. When the officers arrived, they searched the area surrounding the site where the shooting occurred but did not find any weapons or anything else of significance.

All of the defendant's evidence consisted of his own testimony. He testified in substance that he went to the Williams residence to purchase some home brew, and deceased delayed bringing it out; that he started to leave when deceased said ". . . wait a damn minute" and he heard something behind him and when he turned, deceased was close to him and came on him with a knife. Defendant reached in his back pocket and got his gun and ". . . me and him went together . . ." and the gun went off. " . . . I was trying to keep him from cutting me, and I reckon he was trying to keep me from shooting him." Defendant stated that he did not have any intention of shooting the deceased; that he does not know what happened to his gun; and he turned himself in because ". . . I didn't want to be caught while I was on the run."

Attorney General Morgan, by Assistant Attorney General Weathers, for the State.

Wallace C. Harrelson, Public Defender, Eighteenth Judicial District, for the defendant appellant.

BALEY, Judge.

The only assignments of error brought forward by defendant concern the charge of the court. In our view the charge was comprehensive and fair and fully presented the contentions of the defendant and the law as it applied to the facts in this case.

Defendant relied upon his plea of self-defense. The plea of self-defense rests upon necessity, real or *apparent*. One may kill in defense of himself if he believes it to be necessary and has a reasonable ground for such belief. The reasonableness of the belief must be judged by the facts and circumstances as they appear to the defendant, and it is a question for the jury to

determine the reasonableness of defendant's belief. *State v. Robinson,* 213 N.C. 273, 195 S.E. 824.

[1]   Upon the plea of self-defense, the court properly left it to the jury to determine the reasonableness of the belief of the defendant that he was in danger of death or great bodily harm under all the circumstances as they appeared to him.

[2]   This was a case in which the evidence was clear that the defendant and deceased were engaged in an altercation, and deceased was killed by the use of a deadly weapon. The court submitted all permissible verdicts to the jury, and defendant was convicted of voluntary manslaughter. Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation. *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129; *State v. Benge,* 272 N.C. 261, 158 S.E. 2d 70. The State's evidence fully supports the verdict of the jury.

We have carefully examined all assignments of error and find them to be without merit. Defendant had a fair trial free from prejudicial error.

No error.

Judges CAMPBELL and BRITT concur.